# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CT-00699-SCT

*BARRY GREGG*

*v.*

*NATCHEZ TRACE ELECTRIC POWER
ASSOCIATION AND ELECTRIC POWER
ASSOCIATIONS OF MISSISSIPPI WORKERS'
COMPENSATION GROUP, INC.*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/14/2009 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER, JR. |
| COURT FROM WHICH APPEALED: | WEBSTER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ANGELA TURNER LAIRY |
| | BENNIE L. TURNER |
| ATTORNEY FOR APPELLEES: | AMY K. TAYLOR |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED AND REMANDED - 06/09/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     Barry Gregg filed a petition to controvert concerning a work-related injury to his back

that he sustained at his job as a serviceman with Natchez Trace Electric Power Association

(Natchez).  Gregg claimed that the injury had rendered him permanently partially disabled

because, due to a pole-climbing restriction imposed after the injury, he was no longer able

earn on-call compensation.  After a hearing, an administrative law judge found Gregg had

sustained no permanent disability. The Workers' Compensation Commission (Commission) adopted the findings of the administrative law judge. Gregg appealed to the Circuit Court of Webster County, which affirmed the order of the Commission. Then, Gregg appealed to the Court of Appeals, which affirmed the decision of the circuit court. *Gregg v. Natchez Trace Electric Power Ass'n*, 2010 WL 2280588, at *5 (Miss. Ct. App. June 8, 2010).

¶2.     This Court granted Gregg's petition for certiorari to consider whether the Commission erred by denying permanent partial disability benefits. We reverse and remand to the Commission for a hearing on the issue of lost wage-earning capacity.

## FACTS

¶3.     Gregg worked as a serviceman for Natchez. On July 21, 2004, he sustained an admittedly compensable injury to his lower back while lifting a tool belt. Gregg had surgery on his back, and his treating physician determined that he had reached maximum medical improvement on May 2, 2006. He returned to work on December 15, 2006, with a ten percent anatomical disability rating and a permanent climbing restriction.

¶4.     At a hearing before an administrative law judge, Gregg testified that his preinjury job duties had consisted of restoring power, turning power on and off, climbing poles, and climbing ladders and hooking up service. He stated that his preinjury duties had required climbing and some heavy lifting. Gregg and his supervisor testified that he also had performed on-call service calls. Gregg was on call every other week for a seven-day period. He received a flat rate of one hour of time-and-a-half pay for each day he was on call, whether or not he actually performed any service calls that day. Gregg also automatically

received two hours of time-and-a-half pay for each on-call service call that he performed, plus additional hourly pay if the time exceeded two hours.

¶5.    After the injury, Gregg returned to work as a serviceman; his supervisor testified that other members of Gregg's crew performed any climbing that was required on the job. Both Gregg and his supervisor testified that, because Gregg could no longer climb, he was taken off the on-call list. Gregg claimed that he was permanently partially disabled because, due to the climbing restriction, he was no longer able to earn on-call compensation after the injury as he did before the injury.

¶6.    Gregg's preinjury average weekly wage was $840.21, including on-call compensation, and his post-injury average weekly wage was $891.21, without on-call compensation. Gregg testified that the reason his post-injury earnings exceeded his preinjury earnings was that his base pay as a serviceman had increased due to cost-of-living raises. He testified that, because he was taken off the on-call list, he was no longer eligible to earn on-call compensation in addition to his base pay.  Gregg argued that, but for the injury, he would receive compensation for on-call duties in addition to his base pay, as he did preinjury. Therefore, Gregg argued, his wage-earning capacity had decreased due to the injury.

¶7.    The administrative law judge found that Gregg had failed show any permanent disability as a result of the injury. The full Commission, with one commissioner dissenting, adopted the decision of the administrative law judge. Gregg appealed to the circuit court, which affirmed the order of the Commission. The Court of Appeals affirmed the decision of the circuit court.

## STANDARD OF REVIEW

3

¶8. This Court's review of a decision of the Workers' Compensation Commission is limited to determining whether the decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated one's constitutional or statutory rights. *Short v. Wilson Meat House, LLC*, 36 So. 3d 1247, 1250 (Miss. 2010) (quoting *Public Employees' Ret. Sys. v. Dearman*, 846 So. 2d 1014, 1018 (Miss. 2003)). The concept of substantial evidence overlaps with the arbitrary-and-capricious standard, such that a decision that is unsupported by substantial evidence is necessarily arbitrary and capricious. *Id.* at 1251. Because the Commission is the ultimate fact-finder and judge of the credibility of the witnesses, this Court may not reweigh the evidence before the Commission. *Id.* (quoting *Barber Seafood, Inc. v. Smith*, 911 So. 2d 454, 461 (Miss. 2005)).

¶9. This Court affords de novo review to the Commission's application of the law. *Natchez Equip. Co., Inc. v. Gibbs*, 623 So. 2d 270, 273 (Miss. 1993). "The legal effect of the evidence, and the ultimate conclusions drawn by [the Commission] from the facts . . . are questions of law, especially where the facts are undisputed or the overwhelming evidence reflects them." *Cent. Elec. Power Ass'n v. Hicks*, 236 Miss. 378, 388-89, 110 So. 2d 351, 356 (1959). "[W]hen the agency has misapprehended a controlling legal principle, no deference is due, and our review is de novo." *ABC Mfg. Corp. v. Doyle*, 749 So. 2d 43, 45 (Miss. 1999).

## DISCUSSION

¶10. Under the Workers' Compensation Law, "compensation shall be payable for disability . . . of an employee from injury . . . arising out of and in the course of employment, without

4

regard to fault . . . ." Miss. Code Ann. § 71-3-7 (Rev. 2000). "'Disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings." Miss. Code Ann. § 71-3-3(i) (Rev. 2000). "Disability" comprises (1) an actual physical injury; and (2) loss of wage-earning capacity. *I. Taitel & Son v. Twiner*, 157 So. 2d 44, 46 (Miss. 1963).

¶11.    The claimant bears the burden of proof of disability and its extent. *Am. Potash & Chem. Corp. v. Rea*, 228 So. 2d 867, 868 (Miss. 1969). This is not a simple comparison of the preinjury wage with the post-injury wage. *Karr v. Armstrong Tire & Rubber Co.*, 216 Miss. 132, 137, 61 So. 2d 789, 792 (1953). "The benefits are figured on a percentage of applicant's average weekly wages at the time of the injury as compared to 'his wage-earning capacity thereafter in the same employment or otherwise.'" *Id.*

¶12.    A rebuttable presumption of no loss of wage-earning capacity arises when the claimant's post-injury wages are equal to or exceed his preinjury wage. *Gen. Elec. Co. v. McKinnon*, 507 So. 2d 363, 365 (Miss. 1987). This presumption is rebutted by

> evidence on the part of the claimant that the post-injury earnings are unreliable due to: *increase in general wage levels since the time of accident*, claimant's own greater maturity and training, longer hours worked by claimant after the accident, payment of wages disproportionate to capacity out of sympathy to claimant, and the temporary and unpredictable character of post-injury earnings.

*Id.* (emphasis added). "[A]ny factor or condition which causes the actual post-injury wages to become a less reliable indicator of earning capacity will be considered." *Id.*

5

¶13.    In the decision adopted by the Commission, the administrative law judge observed that Gregg makes more money after the injury than he earned before the injury. The administrative law judge found that Gregg had shown that he was permanently restricted from climbing. In her decision, the administrative law judge stated:

> The claimant suffered an admittedly compensable injury in the form a [sic] back injury and was temporarily and totally disabled from the date of July 21, 2004 to and through the date designated and stipulated to be the date of maximum medical improvement, namely May 2, 2006.
> Lay and medical testimony indicate that the claimant was ultimately returned to full duty with singular description and/or restriction of "no climbing" later specified to be "no pole climbing" which could indeed have been a part of serviceman work for the power company. However, lay testimony was replete with references that such "pole climbing" is not required for the discharging of all pertinent duties relative to the claimant's current employment. He is in no danger of losing his job because of this permanent restriction and, further, it has no impact on his wage earning potential. Ergo, all factors considered, the claimant has suffered no [loss of] wage earning capacity and none is found.

The Court of Appeals affirmed the Commission's decision on the basis of the presumption that, because Gregg earns more after his injury than he earned before the injury, Gregg had failed to prove that the climbing restriction had caused a loss of wage-earning capacity. *Gregg*, 2010 WL 2280588, at *4.

¶14.    The Court of Appeals found that Gregg had failed to rebut the presumption of no loss of wage-earning capacity that arose, because his post-injury wages exceeded his preinjury wages, including on-call compensation, by approximately $50 per week. *Id.* The Court of Appeals affirmed the finding of no loss of wage-earning capacity, reasoning that, because Gregg earned more money post-injury without on-call compensation than he had earned preinjury with on-call compensation, he had incurred no loss of wage-earning capacity. This

6

reasoning ignored the fact that Gregg had proven he was no longer eligible to earn on-call compensation because of the climbing restriction imposed due to the injury.

¶15.   The Court of Appeals held that Gregg's own testimony was the only evidence before the Commission that showed that Gregg was no longer eligible to earn on-call compensation due to the injury. *Gregg*, 2010 WL 2280588, at *4. The Court of Appeals stated: "[Gregg's] weekly wage increased, and Gregg's testimony failed to show both that he could not earn [on-call compensation] and also that he could not perform the duties of a serviceman with his climbing restriction." *Id.* Contrary to this finding of the Court of Appeals, the record reflects undisputed evidence that Gregg's post-injury wages at Natchez would have been higher but for the climbing restriction, because he could not earn on-call compensation post-injury. The following testimony is taken from Gregg's cross-examination of the employer's representative:

Q.  Now Mr. Gregg has testified this morning that when he was working as a service man, he sometimes was on call for approximately seven days per week at a time; is that correct?

A.  That's correct.

Q.  And he told us that when he was on call, if he received a call, he was compensated two hours overtime for the call assuming that it required two hours or less time to service it; is that correct?

A.  That's correct.

Q.  And if it took six hours, he got six hours overtime?

A.  That's correct.

Q.  Now he has told the Court that since he has been on this climbing restriction by his doctor, he's not on call any longer; is that correct?

7

A. That's correct.

Q. So whatever overtime he was generating from being on call, he's not eligible for that now; is that correct?

A. He's not eligible for that time, but there is – sometimes if he's not on call a week at a time like he was, but there are some times I might call him for special things.

Q. That might be a certain occurrence or emergency where he may be called out and get some overtime, is that what you're telling me?

A. That's right.

Q. He has, I believe, testified that he estimated he probably got two calls during this seven-day period that he was on call, which would result in, approximately, four hours of overtime during that period. Would you disagree with that?

A. No, not really . . . .

Thus, Natchez admitted that Gregg was no longer eligible to earn on-call compensation due to his work-related injury.

¶16.    But for the climbing restriction imposed by his work-related injury, Gregg now could earn an amount over and above his regular wages through steady on-call compensation by being on-call every other week, as he had been preinjury. Because he had earned one hour of on-call compensation for every day he was on call, and he had been on call at least fourteen days per month, Gregg would have earned at least fourteen hours of on-call compensation in addition to his base pay but for the injury. Therefore, although Gregg's regular wages increased post-injury, his post-injury income would have been higher but for the climbing restriction, because he could no longer augment his regular wages with steady on-call compensation. The record evidence supporting this conclusion is undisputed.

8

Therefore, the Commission erred by finding that the injury "ha[d] no impact on his wage-earning potential."

¶17. The Commission erred by considering Gregg's higher wage post-injury as determinative of no lost wage-earning capacity. All of the evidence before the administrative law judge showed that Gregg had rebutted the presumption of no lost wage-earning capacity. We reverse and remand this case to the Commission for further development of the evidence concerning Gregg's wage-earning capacity.

¶18. **REVERSED AND REMANDED.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, KITCHENS AND PIERCE, JJ., CONCUR. LAMAR, J., CONCUR IN RESULTS ONLY. KING, J., NOT PARTICIPATING.**