IRVING, P.J.,
for the Court:
¶ 1. On December 17, 2008, Albert Conley filed a petition to controvert with the Mississippi Workers’ Compensation Commission (Commission) alleging that he had sustained a compensable injury to his back on January 27, 2004, and on May 1, 2008, while working as a meter reader for the City of Jackson, Mississippi (City). The City admitted that Conley had sustained a compensable injury but denied that he suffered any loss of wage-earning capacity as a result of the injury.
¶ 2. A hearing was held before an administrative judge (AJ), who found that Conley had reached maximum medical improvement (MMI) on November 16, 2009; that Conley suffered a five percent permanent-partial medical-impairment rating; that Conley does not suffer from significant work restrictions related to his work injury; that Conley is still employed by the City and is not fearful of losing his job; that Conley suffered a ten percent loss of wage-earning capacity as a result of his injury; and that Conley’s average weekly wage at the time of the injury was $674.31, with a corresponding compensation rate of $448.87. The City petitioned the Commission for a review of the AJ’s decision. The Commission determined that: (1) Conley had failed to demonstrate that his injury resulted in a permanent loss of wage-earning capacity; and (2) the City’s total payment in temporary disability benefits far exceeded the benefits that Conley was entitled to, and any overpayment would be credited toward any permanent disability benefits due to Conley.
¶ 3. Feeling aggrieved, Conley appeals and argues that the Commission erred in finding that he suffered no loss of wage-earning capacity and in finding that the City’s total payments in temporary disability benefits exceeded the benefits that he was entitled to for his injuries.
¶ 4. Finding no error, we affirm.
FACTS
¶ 5. Conley began working for the City as a meter reader in 1992. Prior to working for the City, Conley worked at Red Arrow Car Wash as a car detailer and at Sack and Save Grocery store as a maintenance worker. Both of his previous jobs required some heavy lifting, repeated bending, and squatting.
¶ 6. On January 27, 2004, Conley, while in the course and scope of his employment •with the City as a meter reader, bent over to read a water meter and felt a “pinch” in his back. After reading that meter and replacing it, he moved on to read the next meter. He bent over to pick up the meter and could not stand back up.
¶ 7. Conley described his pain as mainly in his lower back. He testified that his back becomes stiff, which causes pain when he tries to move around. He takes muscle relaxers and anti-inflammatory medications to assist with his pain. Conley testified that he discussed surgery with his doctor and still considers it an option if necessary. After his injury, the City placed Conley on light-duty work.
¶8. Conley’s light-duty work included shredding papers, answering phones, data entry, and mail runs. Conley also testified that sometimes he would “just sit there” until the City gave him work to do. In May 2008, Conley attempted to return to *911 his regular duties as a meter reader. He claimed that he re-injured his back and that the City returned him to light-duty status. At the time of the hearing before the AJ, Conley still worked for the City, but believed that his new position was a clear accommodation for his injury. Conley testified that, although he had searched for other jobs, he would not have taken a job with another employer if offered.
¶ 9. Several doctors examined Conley after his injury. Dr. Bruce S. Senter treated Conley soon after his injury in 2004. Dr. Senter placed Conley at MMI on March 28, 2004, assigned Conley a five percent permanent impairment rating, and released him to return to work without restrictions. Four months later, Dr. Sen-ter re-examined Conley but did not change his opinion.
¶ 10. Dr. Kenneth Fox examined Conley on January 8, 2009. Based on the results from Conley’s functional capacity evaluation, Dr. Fox assigned Conley a five percent permanent whole-person impairment rating. The impairment rating, according to Dr. Fox, is “based upon [one] disk herniation as [Conley’s] subjective pain complaints have consistently been inconsistent with his objective findings, and there was some behavior suggestive of symptom magnification on the functional capacity evaluation.” Dr. Fox opined that, in the future, Conley would need physical therapy twice a month. Additionally, Dr. Fox assigned Conley permanent work restrictions of no repeated lifting greater than twenty pounds, no repeated squatting, and no repeated bending at the waist.
¶ 11. Bruce Brawner, a vocational-rehabilitation consultant, interviewed Conley on August 25, 2010. Brawner’s report was admitted into evidence, and both parties stipulated that Brawner is an expert in the field of vocational rehabilitation and in determining post-injury wage-earning capacity. The report stated that after Conley’s injury, he retained the ability to perform sedentary, light, and some medium-level work. Brawner also noted that Conley had returned to work with the City, and his pay rate had not changed since his injury. However, if Conley were to lose his current job with the City, he would incur a loss of wage-earning “level,” and his average pay would decrease to approximately $850 per week.
¶ 12. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 18. Conley argues that the Commission erred in finding that he had not demonstrated a loss of wage-earning capacity and in finding that he was not entitled to additional temporary disability benefits. Our standard of review in workers’ compensation cases “is limited to determining whether the decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated [the claimant’s] constitutional or statutory rights.” Gregg v. Natchez Trace Elec. Power Ass’n, 64 So.3d 473, 475 (¶ 8) (Miss.2011) (citing Short v. Wilson Meat House, LLC, 36 So.3d 1247, 1250 (¶ 17) (Miss.2010)). “[T]he Commission is the ultimate fact-finder and judge of the credibility of ... witnesses,” and therefore, appellate courts “may not reweigh the evidence [that was] before the Commission.” Id. (citing Short, 36 So.3d at 1251 (¶ 23)). Based on our review of the record, we find that the Commission’s decision was supported by substantial evidence.

I. Loss of Wage-Earning Capacity

¶ 14. The AJ found that Conley had suffered a ten percent loss in wage- *912 earning capacity as a result of his injuries. The Commission reversed the AJ’s finding and held that Conley failed to demonstrate that he had suffered a permanent loss in wage-earning capacity. Conley contends that the Commission’s finding was in error. As the claimant, it was Conley’s responsibility to demonstrate a loss of wage-earning capacity. See Wright v. Univ. of Miss. Med. Ctr., 75 So.3d 78, 81 (¶ 12) (Miss.Ct.App.2011). The Mississippi Supreme Court has stated:
[I]t is a well-settled rule of law that in determining wage-earning capacity in the situation where an injured employee returns to work and receives the same or greater earnings as those prior to his injury, there is created a rebuttable presumption that he has suffered no loss in his wage-earning capacity.
Omnova Solutions, Inc. v. Lipa, 44 So.3d 935, 941 (¶ 17) (Miss.2010) (quoting Agee v. Bay Springs Forest Prods., Inc., 419 So.2d 188, 189 (Miss.1982)). The claimant can rebut the presumption by presenting
evidence ... that the post-injury earnings are unreliable due to: [an] increase in general wage levels since the time of accident, [the] claimant’s own greater maturity and training, longer hours worked by [the] claimant after the accident, payment of wages disproportionate to capacity out of sympathy to [the] claimant, and the temporary and unpredictable character of post-injury earnings. «
Gregg, 64 So.3d at 476 (¶ 12) (quoting Gen. Elec. Co. v. McKinnon, 507 So.2d 363, 365 (Miss.1987)).
¶ 15. It is undisputed that Conley returned to work for the City as a meter reader at his pre-injury wage rate. Thus, the “rebuttable presumption” was that he had not suffered a loss in his wage-earning capacity. Conley failed to offer substantial evidence to rebut this presumption. There was no evidence that the general wage levels had increased since Conley’s injury, no evidence that Conley’s additional training contributed to the wages, and no evidence that Conley was working longer hours. Conley argues, however, that his post-injury wages are out of sympathy and are temporary in nature. He offers no evidence to support his assertions. Conley relies on Brawner’s report to insist that he has suffered a loss in wage-earning capacity. However, Brawner opined that Conley would suffer a loss of wage-earning capacity only “should he [lose] his current light-duty job with the City of Jackson[.]” Because there was no evidence that the City intended to terminate Conley’s employment or that Conley seriously considered seeking employment elsewhere, there was substantial evidence for the Commission to determine that Conley had not suffered a loss of wage-earning capacity. This issue is without merit.

II. Temporary Disability Benefits

¶ 16. The AJ initially found that Conley was entitled to temporary total disability benefits from January 27, 2004, through November 16, 2009. The Commission reversed the AJ’s decision and held that Conley was not entitled to any additional temporary disability benefits from the City. Conley asserts that the Commission’s decision is unsupported by the evidence.
¶ 17. “[B]enefits for temporary total disability are payable when the employee is completely unable to engage in work and is therefore suffering a total, yet temporary, loss of wage[-]earning capacity.” Howard Indus., Inc. v. Robinson, 846 So.2d 245, 253 (¶ 23) (Miss.Ct.App.2002) (citations omitted). Here, Conley informed Brawner that, as a result of his injury, he missed work for approximately two weeks, after which he returned to *913 work for the City full-time. Therefore, Conley is not entitled to temporary total disability benefits throughout the period set by the AJ, because it is undisputed that Conley worked during that period.
¶ 18. After examining Conley’s payroll records, the Commission determined that Conley only lost $681.30 in wages after his first injury and $170.84 in wages after his second injury. The Commission awarded Conley two-thirds of each figure as temporary total disability benefits — totaling $568.12. As the City had paid Conley in excess of $2,000 in temporary disability benefits, substantial evidence supported the Commission’s decision that he was not entitled to further payments. Accordingly, this issue is without merit.
¶ 19. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.