WILSON, J.,
for the Court:
¶ 1. Patricia Weathersby has worked in clerical positions at Mississippi Baptist Health Systems, most recently as a financial analyst, since 2001. In' 2011,- she injured her back at work, but she returned to her job, without restriction, and continued to earn the same wages and perform the same duties as prior to her injury. Weathersby has undergone two surgeries and experienced continued pain and discomfort as a result of her injury, but according to her supervisors and by her own account, she has continued to perform her job capably.
¶ 2. Weathersby filed a petition to controvert with the Mississippi Workers’ Compensation Commission (Commission), seeking permanent partial disability benefits for her back injury. However, in accordance with longstanding precedent, the Commission applied a rebuttable presumption that Weathersby had suffered no loss of wage-earning capacity — and, hence, no disability — because she returned to work at the same wages as prior to her injury. The Commission also found that Weath-ersby had not presented any evidence to rebut that presumption. Because the Commission’s decision is supported by substantial evidence and is not clearly erroneous, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 3. Patricia Weathersby has worked for Mississippi Baptist Health Systems (Baptist) since July 2001. She started at Baptist as a claims' collector, working with insurance companies to process payment of claims, and she was later promoted to a position as a financial analyst. On March 11, 2011, Weathersby injured her back while lifting a five-gallon water bottle to place on a water eooler. Baptist acknowledged that Weathersby had suffered k compensable injury and began paying workers’ compensation benefits, including medical treatment and temporary disability benefits.
¶ 4. Dr. Lynn Stringer, a neurosurgeon, examined Weathersby and diagnosed her with a herniated disc at L4-L5. Dr. Stringer performed surgery on Weathersby m May 2011, and Weathersby began working from home via. remote access as soon as she was stable in June 2011. Weathersby was allowed to telecommute on a full-time basis during her recovery, whereas prior to her injury she telecommuted only one or two days a ■ week. By July 2011, Weath-ersby resumed her normal schedule of. telecommuting only one or two. days a week. This was .consistent with Dr. Stringer’s recommendations.
¶5. Weathersby continued her regular work schedule until September 2012, when she experienced a flare-up of' her back injury. Dr. Stringer examined her' and indicated that she needed to be off of work, although apparently she was able to .continue working from home. Dr. Stringer also ordered an MRI, which .revealed scarring from her prior surgery but no recurrent disc herniation. Weathersby then saw Dr. David Collipp, who. placed her in physical therapy and prescribed medicine for pain. Weathersby also saw Dr. Edwin Dodd, a pain management spe'cialist, who administered a series' of epidural steroid injections.[1] In November 2012, Dr. ‘Collipp determined that Wéath-ersby could continue regular work' and, although-it was not medically necessary, he recommended that she be allowed to continue tó work from home. Baptist had no objection, so Weathersby continued to Work from home until January 2013.
*880 ¶6. In January 2013, Dr. Collipp released Weathersby to all light-duty work, which included her normal work at Baptist. Dr. Collipp observed that Weathers-by might experience permanent nerve pain or numbness, and he recommended that she take breaks from sitting every thirty minutes. He also ordered another MRI, which showed a mild generalized disc bulging at L4-L5 and a mild degenerative disc bulge at L5-S1.
¶ 7. After Dr. Collipp released her to work, Weathersby returned to her normal schedule of working from home one day a week and at Baptist the other four. Thereafter, Weathersby occasionally had to leave work early due to pain and numbness, and she took breaks to alternate between sitting and standing. Baptist also allowed her to take a few days off to recover after she received injections for pain and inflammation. Baptist evaluated Weathersby’s work space and arranged for a new chair, a foot rocker, and a new computer setup. Baptist also provided Weathersby with a parking pass to allow her to park closer to her building.
¶ 8. Weathersby saw Dr. Stringer again in February 2013. She reported pain in her right hip, leg, and foot. Dr. Stringer diagnosed her with post-operative changes and prescribed medication for pain, but he did not recommend additional surgery at that time.
¶ 9. Dr. Robert McGuire conducted an independent medical exam of Weathersby in November 2013. Dr. McGuire did not believe Weathersby required further surgery, and he found that she had reached maximum medical improvement with a fifteen percent impairment to the body as a whole. He restricted her work to “light work” on a permanent basis and recommended that she avoid manual labor, but he concluded that she could continue her work as a financial analyst at Baptist without restriction.
¶ 10. Weathersby returned to Dr. Dodd in June 2014. She reported that she had done well with only a “few small episodes of decreased discomfort over the [prior] year and a half.” Dr. Dodd recommended that she continue taking an anti-inflammatory medication that another physician had prescribed. Dr. Dodd also noted Weath-ersby had experienced a symptom flare-up a few weeks prior, and he administered another epidural steroid injection. When he saw Weathersby again in July 2014, Dr. Dodd noted that she had improved since the last steroid injection, but she still experienced daily discomfort. He prescribed medicine for her pain and recommended that she repeat steroid injections.
¶ 11. Weathersby filed a petition to controvert with the Mississippi Workers’ Compensation Commission on March 4, 2013. Baptist admitted a compensable injury but denied that Weathersby had suffered any permanent disability or loss of wage-earning capacity. On August 1, 2014, an administrative judge (AJ) of the Commission held an evidentiary hearing. The parties stipulated that (1) Weathersby injured her back in the course and scope of her employment on March 11, 2011; (2) Weathersby’s average weekly wage at the time of her injury was $1,013.48; and (3) Weathersby was not entitled to additional temporary disability benefits. The only contested issues were the date of maximum medical improvement and the existence and extent of any permanent disability. Weathersby’s deposition and medical records were admitted into evidence at the outset of the hearing.
¶ 12. Weathersby testified at the hearing that Baptist had been “very willing to assist” her in returning to work and that she had not lost any income as a result of her injury. She acknowledged that the *881 physical demands of her job did not require her . to lift anything heavier than a stack of documents and that her injury had not prevented her from fulfilling any of her job duties. She testified that, to the ■best of her knowledge, her supervisors were satisfied with her job performance. She also testified that she was not looking for other employment and planned to continue working at Baptist for the foreseeable future.
¶ 13. Ben McGaugh, Weathersby’s supervisor from January 2010 until November 2013, testified that Weathersby’s performance evaluations — both prior to and after her injury — all indicated that she met or exceeded expectations. McGaugh praised Weathersby’s work ethic, initiative, and willingness to learn. He testified that her position was sedentary and did not require any physical áctivity more strenuous than lifting paper. According to McGaugh, Weathersby’s injury had no effect on her work, and he received no complaints about her performance after she returned to work.
¶ 14. Lynn Christy had been Weathers-by’s supervisor since November 2013. She described Weathersby as a dedicated and capable employee. Christy testified that, due to shared office space, Weathersby and another contract analyst rotated days in the office. As a result, Weathersby telecommunicated two or three days a week, which was more often than prior to her. injury. However, this was due to a change in the location of Weathersby’s department, not her injury. Christy testified that Weathersby’s back injury had not affected her job performance, and Weathers-by had not been passed over for a promotion or pay increases as a result of her injury.
¶ 15. The AJ rendered a decision on November 7, 2014. The AJ identified July 5, 2011, as Weathersby’s date of maximum medical improvement. This was the date Dr. Stringer released Weathersby to return to work, and Weathersby was already working full-time from her home at that timé.' The AJ also found that Weathersby had suffered a ten percent loss of wage-earning capacity. She ordered Baptist to pay $67.70 in permanent partial disability benefits from July 6, 2011, to continue for 450 weeks. On November 25, 2014, Baptist timely petitioned the full Commission for review of the AJ’s decision.
¶ 16. On September 1, 2014 — after the evidentiary hearing but prior to the AJ’s ruling — Dr. Stringer recommended that Weathersby. undergo surgery based on a recurrent disc herniation at L4-L5. Dr. Stringer performed the surgery on November 20, 2014. Weathersby was treated by Dr. Leon Grigoryev post-operation and also underwent a course of outpatient physical therapy. On March 16, 2015, Dr. Grigoryev determined that Weathersby had reached maximum medical improvement. He released her to work at Baptist without restriction and assigned a nine percent permanent partial impairment to the body as a whole. Dr. Grigoryev noted that he did so at Weathersby’s request, as she had advised him that she was capable of doing her job at Baptist without restrictions.
¶ 17. In ApriL2015, Weathersby filed a motion requesting that the full Commission stay further review and remand her claim to the AJ. for additional findings regarding her post-surgery condition. In the alternative, Weathersby asked the Commission to allow her to introduce certain medical records related to her post-hearing surgery and post-operative recovery. Baptist opposed Weathersby’s motion for a stay and remand, arguing that the request was untimely, but Baptist did not object to the introduction of additional medical records. The Commission subse *882 quently denied • Weathersby’s motion to stay and remand but granted her motion to introduce additional evidence.
¶ 18. On the merits, the Commission found that .Weathersby had not proven that she had suffered a loss of wage-earning capacity; therefore, the Commission reversed the AJ’s decision awarding .permanent partial disability benefits. The Commission reviewed all of the evidence, including the medical records related to Weathersby’s recent surgery and post-operative recovery. The Commission recognized that a rebuttable presumption arises that a claimant has not suffered a loss of wage-earning capacity or a permanent disability if the claimant returns to work and earns wages equal to or greater than her pre-injury wages. The Commission found that the presumption applied because Weathersby’s post-injury wages were equal to her pre-injury wages. The Commission also found that Weathersby failed to rebut this presumption with any evidence that her post-injury wages were an unreliable indicator of her wage-earning capacity. In addition, the Commission noted that Dr. McGuire and Dr. Grigoryev had. both determined that Weathersby was “fully capable” of performing her job as a financial analyst and had released her without restriction. The Commission also found “very compelling” Weathersby’s own testimony that she was able to perform her job as usual and that she was earning the same wages as prior to the injury. Finally, the Commission found that Weath-ersby’s date of maximum medical improvement was March 16, 2015, the‘date assigned by Dr. Grigoryev after Her then-recent surgery.
¶ 19. Weathersby timely appealed to this Court. She argues that the Commission erred in determining- that she had suffered no loss of wage earning capacity.
DISCUSSION
¶20. The Supreme Court has summarized the applicable standard of review as follows:
The standard of review in a workers’ compensation appeal is limited to whether the Commission’s decision is supported by substantial evidence.' The ... Commission is the trier and finder of facts in a compensation claim; the findings of the [AJ] to the contrary notwithstanding. This Court will reverse an order of the ... Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence. ■
Lott v. Hudspeth Ctr., 26 So.3d 1044, 1048 (¶ 12) (Miss.2010) (citations omitted).
¶ 21. Furthermore, “[w]here there is conflicting medical testimony, the Commission has the responsibility to apply its expertise and determine which evidence is more credible.” Washington v. Woodland Vill. Nursing Home, 25 So.3d 341, 355 (¶ 33) (Miss.Ct.App.2009) (quoting Wesson v. Fred’s Inc., 811 So.2d 464, 469 (¶ 23) (Miss.Ct.App.2002)). . Thus, “[w]here medical expert testimony is concerned, [the Supreme] Court has held that whenever the expert evidence is conflicting, the Court will affirm the Commission whether the award is for or against the claimant.” Raytheon Aerospace Support Servs. v. Miller, 861 So.2d 330, 336 (¶18) (Miss.2003) (quoting Kersh v. Greenville Sheet Metal Works, 192 So.2d 266, 268 (Miss.1966)). We review the Commission’s application of the law de novo. Gregg v. Natchez Trace Elec. Power Ass’n, 64 So.3d 473, 475 (¶ 9) (Miss.2011).
I. Loss of Wage-Earning Capacity
¶ 22. The AJ found that Weathers-by suffered a ten percent loss in wage-earning capacity due to her back injury, but the Commission reversed. Weathers- *883 by argues that the Commission’s reversal of the AJ was “arbitrary and capricious” and contrary to “undisputed” evidence that she suffered a nine percent to fifteen percent permanent impairment that required accommodations by Baptist.
¶ 23. We begin our discussion with the well-settled proposition that “[t]he law in this State is that the Commission, not the [AJ], is the ultimate fact-finder.” Smith v. Jackson Constr. Co., 607 So.2d 1119, 1123 (Miss.1992). Therefore, we “apply a general deferential standard of review to the Commission’s findings and decisions despite the actions of the [AJ].” Id. at 1123-24. Indeed, once the Commission has ruled, the AJ’s “decision becomes moot.” Sterling v. Eaton Corp., 109 So.3d 1096, 1101 (¶ 16) (Miss.Ct.App.2013) (quoting Kitchens v. Jerry Vowell Logging, 874 So.2d 466, 462 (¶ 16) (Miss.Ct.App.2004)) (brackets omitted). The AJ’s decision is relevant at this stage only insofar as it was adopted by the Commission. See Kitchens, 874 So.2d at 462 (¶ 17).
¶ 24. Mississippi Code Annotated section 71-3-7(1) (Supp.2015) provides for compensation to an employee “for disability ..., from injury .,. arising out of and in the course of employment, without regard to fault as to the cause of the injury_” “Disability” is defined as “incapacity because of injury to earn the wages which the employee was receiving at the time of injury in. the same or other employment_” Miss.Code Ann. § .71-3-3(i) (Supp.2015). “‘Disability’ comprises (1) an actual physical injury; and (2) loss of wage-earning capacity.” Gregg, 64 So.3d at 476 (¶ 10). It is the claimant’s burden to prove both. See id. at (¶ 11).
¶ 25. “A rebuttable presumption of no loss of wage-earning capacity arises when the claimant’s post-injury wages are equal to or exceed his preinjury wage.” Id. at (¶ 12) (citing Gen. Elec. Co. v. McKinnon, 507 So.2d 363, 365 (Miss.1987)). The claimant can rebut this presumption by presenting evidence that
post-injury earnings are unreliable due to: increase in general wage levels since the time of accident, claimant’s own greater maturity and training, longer hours worked by claimant after the accident, payment of wages disproportionate to capacity out of sympathy to claimant, and the temporary and unpredictable character of post-injury earnings.
Gen. Elec. Co., 507 So.2d at 365. The Commission may also consider a claimant’s inability to work, continuing pain, or any other relevant circumstance. Guardian Fiberglass, Inc. v. LeSueur, 751 So.2d 1201, 1204-05 (¶ 10) (Miss.Ct.App.1999) (citing Spann v. Wal-Mart Stores Inc., 700 So.2d 308, 313 (Miss.1997)). Generally, “any factor or condition which causes the actual post-injury wages to become a less reliable indicator of earning capacity will be considered.” Gregg, 64 So.3d at 476 (¶ 12) (quoting Gen. Elec. Co., 507 So.2d at 365).
¶ 26. In Gregg, the claimant injured his back while working as a serviceman for an electric power association. His post-injury earnings exceeded his pre-injury earnings due to cost-of-living raises, but he was no longer able to earn additional “on-call compensation” because his' injury prevented him from climbing utility poles. See id. at 474-75 (¶¶ 3-6). The Supreme Court found that “[b]ut for the climbing restriction imposed by his work-related injury,” the claimant could have earned “an amount over and above his regular wages through steady on-call compensation by being on-call- every other week, as he had been preinjury.” Id. at 478 (¶ 16). “Therefore, although [his]' regular wages increased post-injury, his post-injury income would have been higher but for the climbing; re *884 striction, because he could no longer augment his regular wages with steady on-call compensation.” Id. The Court held that this evidence rebutted the presumption of no loss of wage-earning capacity. See id. at (¶ 17).
¶27. Similarly, in O’Neal v. Multi-Purpose Manufacturing Co., 243 Miss. 775, 140 So.2d 860 (1962), the Supreme Court held that although the claimant received a slight increase in pay post-injury, he presented evidence sufficient to rebut the presumption that he had suffered no loss of wage-earning capacity. Id. at 781, 140 So.2d at 863. There, the claimant presented evidence that all employees had received a slight wage increase subsequent to his injury, as well as evidence that he was unable to perform some of his duties as a welder — specifically, that he required help lifting heavy objects, which his employer accommodated. Id. at 777-78, 140 So.2d at 862. Despite the claimant’s limitations, his employer was satisfied with his performance and paid wages greater than pre-injury. Id. at 777-78, 140 So.2d at 861. However, the Supreme Court concluded that his wage increase was due to “the kindness and generosity of his employer,” and the claimant’s inability to perform all of his duties as a welder “[o]b-viously .... diminished his capacity for earning wages in that occupation.” Id. at 781,140 So.2d at 863.
¶28. In contrast, in Conley v. City of Jackson, 115 So.3d 908 (Miss.Ct.App.2013), this Court affirmed the Commission’s finding that the claimant failed to rebut the presumption of no loss of wage-earning capacity. In Conley, the claimant introduced no evidence that general wage levels had increased, that he was working longer hours, or that his post-injury wages were a product of his employer’s sympathy. See id. at 912 (¶ 15). A vocational rehabilitation expert did testify that the claimant would suffer a loss of wage-earning capacity if he lost his present job with the employer. See id. at 911 (¶ 11). However, this Court concluded that the expert’s testimony was speculative and that there was no evidence that the claimant’s present employment might be terminated. Id. at 912 (¶ 15). Accordingly, we held that despite the expert’s testimony, there was substantial evidence to support the Commission’s finding that the claimant had not rebutted the presumption that he had experienced no loss of wage-earning capacity. Id.
¶ 29. In this case, it is undisputed that Weathersby continued to earn the same wages post-injury as she had prior to her injury. Thus, a presumption arose that she suffered no loss in wage-earning capacity. It was Weathersby’s burden to rebut that presumption, and the Commission found that she failed to do so. Applying our deferential standard of review, we cannot say that the Commission’s decision was clearly erroneous. Weathersby did not present any evidence of a general increase in wage levels since her injury, that she was working additional hours for the same pay, that she was being paid out of her employer’s sympathy, or of any other circumstance that would compel the conclusion that her post-injury wages were an unreliable indicator of her wage-earning capacity. Rather, Baptist presented evidence that her wages remained the same because she continued to fulfill the same job responsibilities just as capably as she had prior to her injury.
¶ 30. Weathersby contends that she established a loss of wage-earning capacity because her treating physicians assigned her a nine percent to fifteen percent permanent impairment and released her to only light-duty employment. However, as our Supreme Court has explained, “a claimant who has suffered a function *885 al/medical disability of 15% may have no industrial disability [ (i.e., loss of wage-earning capacity) ] at all if the functional impairment does not impede the claimant’s ability to perform the duties of employment.” Robinson v. Packard Elec. Div., Gen. Motors Corp., 523 So.2d 329, 331 (Miss.1988). Here, the Commission determined that Weathersby was unable to show that limitations on her ability to perform manual labor had any impact on her “ability to perform the duties of [her] employment” or “resulted in a loss of wage-earning capacity.” Id. This determination was supported by substantial evidence. Weathersby had a history of employment in sedentary, clerical positions,[2] supporting a reasonable inference that a restriction to light-duty work would not be a hindrance to her in the future. Weathersby also did not present any vocational expert to suggest that she would not be able to receive the same level of compensation in another job, nor did she present any evidence that she was in danger of termination.
¶ 31. The Commission properly applied the presumption that Weathersby suffered no loss in wage-earning, and its finding that she-failed to rebut that presumption was not clearly erroneous. “The Commission is the trier of the facts and it was a question of fact whether [Weathersby] rebutted the presumption.” Smith v. Picker Serv. Co., 240 So.2d 454, 456 (Miss. 1970). Because the Commission’s determination that Weathersby suffered no loss of wage-earning capacity is supported by substantial evidence, we affirm. See id. at 456-57.
II. Other Alleged Errors
¶ 32. In her statement of issues, Weathersby asserts that the Commission erred as a matter of law by declining to remand the case to the AJ for additional findings regarding her most recent surgery and recovery. However, Weathersby fails to support this assertion with any explanation or authority in the argument sections of her opening brief or reply brief. The issue is mentioned again only in passing in the conclusion. Accordingly, the issue is procedurally barred. M.R.A.P. 28(a)(6); Pierre v. State, 607 So.2d 43, 48 (Miss.1992); Griffin v. State, 872 So.2d 90, 92 (¶ 6) (Miss.Ct.App.2004).
¶33. Procedural bar notwithstanding, the issue is also without merit. As the Supreme Court has explained, an AJ “is but a ‘facility through which the Commission” conducts business — i.e., “a member of the Commission’s administrative staff’ — not a separate legal entity. Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1246 (Miss.1991). Therefore, the full Commission has total and complete jurisdiction over every workers’ compensation claim “from the moment of [its] filing.” Day-Brite Lighting Div., Emerson Elec. Co. v. Cummings, 419 So.2d 211, 213 (Miss.1982). Accordingly, the full Commission may receive directly whatever additional evidence it deems necessary without remanding the case to an AJ for further hearings. Walker Mfg. Co., 577 So.2d at 1246. The Commission exercised its discretion to do so in this case, granting Weathersby’s motion to admit additional evidence pursuant to Commission Procedural Rule 9. See Miss. Admin. Code § 20-2-1:2.9. Indeed, the Commission admitted all of the additional evidence that Weathersby proffered. Moreover, Weath-ersby did not request a stay and remand until almost five months after her surgery — after Baptist had already filed its *886 merits brief in support of its petition for review by the full Commission. Under these circumstances, the Commission’s decision to simply admit Weathersby’s additional evidence rather than remanding to the AJ for further hearings was not arbitrary, capricious, or an abuse of discretion.
¶34. Weathersby also claims that the Commission’s ruling “contains multiple errors of fact.” Under this heading, she first notes that the Commission misstated the date of her injury as March 11, 2015, rather than March 11, 2011 — an obvious scrivener’s error. “If an error in an order or.judgment is such that it can be plainly seen to be a typographical error that did not [ajffect the law or facts applied to a case, it.is not grounds to reverse.” Hurns v. Miss. Dep’t of Corrs., 878 So.2d 223, 225 (¶ 3) (Miss.Ct.App.2004). Such is the case here.
¶ 35. Weathersby also argues that the Commission’s summaries of the records of Dr. McGuire and Dr. Grigoryev are “disturbing” because the Commission’s decision noted -that both doctors essentially released her to work at her job at Baptist without restriction. Weathersby criticizes the Commission for not also, stating that Dr. McGuire “restricted] her to light work activities on .a permanent basis” and that Dr. Grigoryev released her to work at her own request. Weathersby makes a similar criticism of the Commission’s summary of Dr. Stringer’s records. However, the Commission’s summaries of Weathersby’s medical records are not a basis for reversal. Obviously, any summary of medical records will include some facts and omits others. Here, as described above, there was substantial evidence before the Commission that Weathersby’s injury did not impair her ability to earn wages in her present position at Baptist or similar employment. Weathersby presented no evidence that her injury or any resulting restriction on her performance of manual labor was an obstacle to any employment opportunity that she otherwise would have sought or obtained. The additional comments in her doctors’ notes that were omitted from the Commission’s summary of the evidence do not undermine the Commission’s finding that she experienced no loss of wage-earning capacity. Accordingly, this issue-is also without merit.
CONCLUSION
¶ 36. The Commission properly applied the presumption of no loss of wage-earning capacity because Weathersby’s post-injury wages were the same as her pre-injury wages. In addition, the Commission’s finding that Weathersby failed to rebut that presumption is supported by substantial evidence. Therefore, we affirm the Commission’s determination that Weath-ersby failed to prove that she had suffered a permanent disability.
¶ 37. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, .JAMES AND GREENLEE, JJ., CONCUR.

. Dr. Dodd gave Weathersby a similar- injection in April of 2011, prior to her surgery.

. Weathersby previously worked for approximately twelve years as a claims processor for Blue Cross & Blue Shield of Mississippi, in-eluding eight years in a supervisory capacity. She also previously held part-time jobs processing insurance claims.