# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-WC-00581-COA

**JAY FOSTER**  APPELLANT

**v.**

**SANDERS CONSTRUCTION AND BUILDERS &**  APPELLEES
**CONTRACTORS ASSOCIATION OF**
**MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/26/2019 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEYS FOR APPELLANT: | CHUCK McRAE |
| | JAMES (JAY) R. FOSTER II |
| ATTORNEY FOR APPELLEES: | BRYAN GRAY BRIDGES |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED AND RENDERED - 04/07/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE J. WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.

### J. WILSON, P.J., FOR THE COURT:

¶1. Richard Corsby hired attorney Jay Foster to pursue a workers' compensation claim, but Corsby later fired Foster and hired a new attorney. Foster then filed an attorney's fee lien in Corsby's case. After Corsby settled his workers' compensation claim, he filed a motion to cancel or reduce Foster's lien. The Mississippi Workers' Compensation Commission eventually held a hearing on the motion. Foster, Corsby's new attorney, and counsel for the employer/carrier all appeared. After the hearing, the Commission sanctioned Foster pursuant to Mississippi Code Annotated section 71-3-59 (Rev. 2011) by ordering him to pay $4,000 in attorney's fees to Corsby's new attorney and $4,000 in attorney's fees to counsel for the

employer/carrier. On appeal, Foster challenges the order requiring him to pay attorney's fees to counsel for the employer/carrier.[1] We hold that the Commission's order must be reversed in relevant part because the employer/carrier should have simply held the disputed attorney's fees until the dispute between Corsby and Foster was resolved. Nothing that Foster did should have required any action or material work by counsel for the employer/carrier. Therefore, we reverse and render the order of the Commission in relevant part.

## FACTS AND PROCEDURAL HISTORY

¶2. In June 2017, Richard Corsby hired attorney Jay Foster to file a workers' compensation claim against Corsby's employer, Sanders Construction.[2] However, just two months later, Corsby terminated Foster as his attorney. Corsby notified Foster of his decision by certified mail, which Foster received on August 7, 2017. On August 15, 2017, Foster filed a motion to withdraw as Corsby's counsel and asserted an attorney's fee lien against any recovery by Corsby. Foster claimed that he was entitled to be paid $9,231 for 30.77 hours of work at $300 per hour. Corsby thereafter hired John T. Lamar III to represent him, and Lamar eventually negotiated a settlement with Sanders. Corsby filed a petition for approval of a final compromise settlement with the Commission on September 25, 2018.

¶3. On September 18, 2018—one week before he petitioned the Commission to approve

[1] Foster informed the Commission that "the issue of attorney's fees [was] completely settled with [Corsby's] current attorney," and Corsby's current attorney did not enter an appearance or file a brief on appeal. Foster's briefs on appeal specifically address only the order to pay fees to counsel for the employer/carrier. Therefore, we address only that part of the Commission's order.

[2] We will refer to Corsby's employer and its workers' compensation insurance carrier collectively as "Sanders."

2

his settlement—Corsby filed a motion to cancel or reduce Foster's lien. Corsby disputed the amount of time that Foster claimed to have spent on the case. Corsby also noted that the hourly rate charged by Foster ($300) was more than the rate stated in his contract ($280). Finally, Corsby complained that Foster billed him for significant time after Foster had already received Corsby's letter terminating his services.

¶4. On September 26, 2018, the Commission approved a settlement between Corsby and Sanders. The settlement provided for a lump sum payment of $145,000, which included a twenty-five percent attorney's fee ($36,250). Pursuant to the Commission's order, Sanders agreed to retain that amount in trust pending resolution of Foster's lien.

¶5. On October 1, 2018, Foster responded to Corsby's motion to cancel his lien with a motion for summary judgment. Foster asked the Commission to deny Corsby's motion and to order Corsby to pay his attorney's fee.

¶6. On October 8, 2018, Sanders filed a combined response to Corsby's motion to cancel the lien and Foster's motion for summary judgment. In the two-page document, Sanders stated that "[w]hile it [might] seem [that Sanders would] have no interest with respect to this attorney fee dispute, that [was] not the case." Sanders stated that it could not "close this open claim until this issue [was] resolved . . . and funds [were] disbursed." Therefore, Sanders requested a prompt ruling on the issue.

¶7. On November 9, 2018, the Commission ordered Foster and Lamar to appear before the Commission concerning the dispute over $9,231 in attorney's fees. The Commission also ordered Sanders to release the rest of the attorney's fees ($27,019) to Lamar.

3

¶8. The Commission set a hearing for January 28, 2019. However, on January 25, 2019, Foster filed a motion for a continuance, stating that he was "very sick and [could] hardly talk." The hearing was rescheduled for February 21, 2019.

¶9. On February 15, 2019, Sanders filed a motion for reimbursement of attorney's fees, citing Rule 11 of the Mississippi Rules of Civil Procedure, the Litigation Accountability Act, Miss. Code Ann. §§ 11-55-1 to -15 (Rev. 2019), and Mississippi Code Annotated section 71-3-59. Sanders asked the Commission to order Foster to pay "sanctions, attorneys' fees, and expenses"—but "[o]nly in the event the Commission [found] that [Foster's] lien . . . [was] not valid." On February 18, 2019, Corsby filed a similar motion asking the Commission to order Foster to pay attorney's fees and expenses *if* Foster's lien was deemed invalid.

¶10. At the February 21, 2019 hearing before the Commission, Foster admitted that his contract provided for an hourly rate of $280 but that his lien charged an hourly rate of $300. He attributed the discrepancy to a software error. The Commission asked Foster why he had not filed a corrected lien. Foster admitted that he had been "on notice" of the error for several months and that he should have corrected it.

¶11. Foster also admitted that although his bill indicated that he had personally performed all of the work on the case file, it was possible that a paralegal did some of the work. He said that any work that a paralegal performed should have been billed at a rate of only $75 per hour. Foster also attempted to explain an entry for 8.75 hours ($2,625) on August 15, 2017—i.e., eight days after Foster knew that Corsby had terminated him. The only description for that block of time was "35 emails to client." According to Foster, these were

4

"form emails" that "let[] the client know how workers' comp works and what needs to be done." Foster stated that he had sent the emails to Corsby earlier but did not record that time contemporaneously. Foster stated that he charged 0.25 hours for each form email, which he considered "under billed" because it took him much longer than that to create the forms (when he originally created them, years ago). Foster also denied that Lamar had ever tried to contact him to negotiate a settlement of the lien.

¶12. Lamar stated to the Commission that Corsby reviewed Foster's bill and disputed the amount of work Foster claimed to have done. Corsby decided that he wanted to file a motion to cancel the lien. Lamar also stated that beginning in September 2018, he called Foster several times to try to settle the dispute, but Foster never returned his calls until the week of the hearing. Lamar believed that Foster had unduly delayed resolution of the case.

¶13. The Commission took the matter under advisement. Before the Commission ruled, Foster and Lamar settled all of their pending motions related to the attorney's fee lien and asked the Commission to dismiss those motions. The Commission granted their joint request to dismiss their pending motions as moot. On February 26, 2019, the Commission ordered Foster to tender $4,000 to Lamar and $4,000 to counsel for Sanders. The Commission based the sanctions on assumptions of twenty hours of work related to the attorney's fees motions at a rate of $200 per hour. The Commission's order was entered "on its own motion" and pursuant to its authority under Mississippi Code Annotated section 71-3-59.

¶14. On appeal, Foster advances several arguments. He argues that the Commission's decision is arbitrary and violates due process because there is no evidence of any attorney's

5

fees incurred by Sanders and because he was unable to cross-examine witnesses on the issue. He also argues that he did not improperly delay the case or resolution of the lien. He also argues that Sanders lacks "standing" to recover attorney's fees and should not have incurred any fees because it had no stake in the fee dispute between him and Lamar. Finally, he argues that the Commission's decision should be reversed because it failed to consider the *McKee* factors. *See McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).

## ANALYSIS

¶15. Although Foster has asserted several issues on appeal, the real issue is simply whether the Commission erred by ordering Foster to pay attorney's fees to Sanders. In general, our "review of a decision of the Workers' Compensation Commission is limited to determining whether the decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated . . . constitutional or statutory rights." *Gregg v. Natchez Trace Elec. Power Ass'n*, 64 So. 3d 473, 475 (¶8) (Miss. 2011). However, "we review issues of law de novo." *Miss. Mfrs. Ass'n Workers' Comp. Grp. v. Miss. Workers' Comp. Grp. Self-Insurer Guar. Ass'n*, 281 So. 3d 108, 114 (¶24) (Miss. Ct. App. 2019) (quoting *Huey v. RGIS Inventory Specialists*, 269 So. 3d 362, 366 (¶12) (Miss. Ct. App. 2018), *cert. denied*, 258 So. 3d 286 (Miss. 2018)).

¶16. If the Commission determines that a party has "instituted, continued or delayed" proceedings "without reasonable ground," then the Commission may require the guilty party to reimburse the opposing party for its "reasonable expenses, including attorney's fees, caused by such institution, continuance or delay." Miss. Code Ann. § 71-3-59(2). As noted,

6

the Commission exercised this authority and sanctioned Foster for delaying the proceedings by ordering him to pay $4,000 to both Lamar and counsel for Sanders.

¶17.  As noted above, *see supra* n.1, it appears that Foster settled any dispute with Lamar, and his brief on appeal does not address the Commission's order to pay fees to Lamar. Therefore, we address only the Commission's order insofar as it required Foster to pay fees to counsel for Sanders.  At the hearing before the Commission, counsel for Sanders only spoke briefly.  Counsel stated that Sanders did not "have much of a dog in the hunt" and took "no position" regarding the validity of Foster's lien.  Rather, Sanders just had "an open file" that it wanted to close.  Counsel represented that his firm had expended "over 30 hours of attorney and paralegal time" because of "non-communication, non-cooperation" by Foster. And counsel stated that Sanders was asking for its "expenses to be reimbursed in the event the lien is found to be invalidated."[3]

¶18.  We conclude that the Commission abused its discretion by ordering Foster to pay attorney's fees to counsel for Sanders pursuant to section 71-3-59.  Nothing that Foster filed or did should have "caused" Sanders to incur any material expense or attorney's fees.  Miss. Code Ann. § 71-3-59(2).  Counsel for Sanders acknowledged that his client had no "dog in the hunt" and took "no position" with respect to the fee dispute between Foster and Lamar. On November 9, 2018, the Commission ordered *Foster and Lamar* to appear before the Commission concerning their dispute over $9,231, but the Commission never ordered

---

[3] Both Corsby and Sanders requested an award of attorney's fees only if Foster's lien was deemed invalid.  The Commission never deemed the lien invalid, in whole or in part, because Foster and Lamar settled the dispute. However, the Commission ultimately awarded fees "on its own motion" and not on the motion of either party.

7

Sanders to appear. Indeed, the Commission did not order Sanders to do anything but continue to hold the funds until the Foster-Lamar dispute was resolved. *No further action by Sanders was necessary.* Rather than filing a motion and responses and appearing for a hearing, Sanders should have simply waited for a further ruling from the Commission. Had it done so, it could have avoided any additional expense. Any additional expense that it incurred in relation to the Foster-Lamar fee dispute was not "caused by" Foster. Miss. Code Ann. § 71-3-59(2). Therefore, the Commission abused its discretion by ordering Foster to pay $4,000 to counsel for Sanders.

¶19. We understand that an "open file" may be an annoyance for a carrier. However, that is simply part of being a workers' compensation insurance carrier. Occasionally a dispute will arise between a current and former attorney for the claimant, as it did in this case, and it may require the carrier to hold some funds until the dispute can be resolved. But that is all that it requires the carrier to do—hold the funds. Whatever minimal administrative burden that involves is just part of the cost of doing business as a carrier.

¶20. We also acknowledge that the Commission was concerned by Foster's failure to correct errors in his billing statement. The Commission may also have been concerned by some specific entries in Foster's billing statement. Such issues may be a valid basis for a penalty or an award of attorney's fees under section 71-3-59, and nothing in our opinion addresses or disturbs the Commission's order insofar as it ordered Foster to pay $4,000 to Lamar. As stated, the Foster-Lamar dispute appears to have been settled, and Foster's brief on appeal does not address the award to Lamar. We simply hold that the Commission abused

8

its discretion by awarding attorney's fees to Sanders when Sanders was not required to do anything but hold funds until an attorney's fee lien was resolved.

¶21. **REVERSED AND RENDERED.**

**BARNES, C.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. CARLTON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**CARLTON, P.J., DISSENTING**:

¶22. I dissent because under our limited appellate review of a Commission's decision, I find that the Commission did not abuse its discretion in sanctioning Foster pursuant section 71-3-59 by ordering him to pay $4,000 in attorney's fees to counsel for the employer/carrier (Sanders).[4]

¶23. In reversing and rendering the Commission's decision, the majority finds that there was no need for Sanders to take any action with respect to Foster's disputed attorney's fee lien, other than hold the funds until the dispute was resolved. For this reason, according to the majority, any expense that Sanders incurred relating to this dispute was not "caused by" Foster, *see* Miss. Code Ann. § 71-3-59(2), and the Commission therefore abused its discretion in awarding attorney's fee to Sanders.

¶24. I disagree. Although the Commission's November 9, 2018 order did not specifically require Sanders to appear at the hearing on the disputed attorney's fee lien, I find that it is apparent from the February 21, 2019 transcript of that hearing that the Commission found

_____

[4] As the majority recognizes, our "review of a decision of the Workers' Compensation Commission is limited to determining whether the decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated . . . constitutional or statutory rights." *Gregg*, 64 So. 3d at 475 (¶8).

it proper for Sanders to be there and for its counsel to participate in the hearing. I find nothing in the record that restricts or in any way would prohibit Sanders's counsel from representing it at the Commission hearing, nor do I find anything in the record that would indicate that the Commission did not want or expect Sanders's counsel to be there.

¶25. In particular, Sanders's counsel was allowed the same amount of time to present Sanders's position to the Commission as the Commission allowed Foster and Corsby's current counsel, Lamar. Indeed, Sanders's counsel was asked to be the first one to present his argument. In presenting his argument, Sanders's counsel detailed the delay and unnecessary motion practice that Foster caused Sanders, as follows:

> This hearing was scheduled, a few times, by the Commission. Ultimately, last week, the employer/carrier filed a motion for reimbursement of expenses.

> It's the position of the employer/carrier that this matter should have been handled, five, six months ago. We should have been able to negotiate a lien. We should have been able to get this settlement approved by the Commission, funds disbursed[,] and the employer/carrier close the file.

> At this point, my office has over 30 hours of attorney and paralegal time tied up in this matter just simply because we're dealing with non-communication, non-cooperation here . . . . The employer/carrier are asking for expenses to be reimbursed in the event the lien is found to be invalidated.

¶26. Later in the hearing, the Commission specifically asked Foster, Lamar, *and* Sanders's counsel to provide their input on the "fee or the amount of time spent due to the delay." Sanders's counsel responded, "Mr. Chairman, I'm at, approximately, [thirty] hours up until today. And, I'm of course, as the employer/carrier attorney, I bill out less than the $280.00, $250.00 or $300.00 that's been discussed here."

¶27. After reviewing the record as a whole, as well as hearing Mr. Foster's testimony at the

10

hearing and the argument of counsel, the Commission found that Foster delayed the proceedings of the claim without reasonable grounds and awarded attorney's fees as contemplated by section 71-3-59. In its order, the Commission described the errors in Foster's lien and Foster's failure to correct that lien after being put on notice of those errors. The Commission also described in its order the unnecessary motion practice caused by Foster's actions, including motion practice involving Sanders.

¶28. I find that it was well within the Commission's discretion to find this delay created unnecessary litigation not just for the claimant, but also for the employer/carrier, and sanctions against Foster under section 71-3-59, including payment of $4,000 in attorney's fees to Sanders's counsel, were appropriate. Sanders was not able to close the open claim until the Commission entered an order, and, after Foster failed to communicate with Lamar regarding the lien, Sanders's counsel believed that in order to protect his client's interest, he was required to litigate this matter through motions, responses to motions, scheduling and rescheduling, and preparing for and appearing at the hearing before the Commission to argue this matter. I do not believe it is our role to dictate the scope or parameters of a lawyer's representation of his or her client under the circumstances in this case. For these reasons, and under our limited standard of review, I respectfully dissent from the majority's decision to reverse and render in this case.