# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-WC-00761-COA

**MISSISSIPPI DEPARTMENT OF ECONOMIC AND COMMUNITY DEVELOPMENT**                    **APPELLANT**

**v.**

**GENERAL REINSURANCE CORPORATION**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/08/2020 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | H. WESLEY WILLIAMS III |
| ATTORNEYS FOR APPELLEE: | JILL RENEE MILLER |
| | GINNY Y. DELIMAN |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 11/23/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND EMFINGER, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     This appeal arises from two separate workers' compensation claims brought by Julia Miller against her employer, Appellant Mississippi Department of Economic and Community Development (MDECD), and concerns coverage issues between MDECD, a self-insured employer pursuant to the Mississippi Workers' Compensation Act (Act), Mississippi Code Annotated section 71-3-75(2) (Rev. 2011), and Appellee General Reinsurance Corporation (GRC), its excess insurer under an "Excess Insurance Policy for Self-Insurer of Workers' Compensation and Employer's Liability" (Policy).

¶2.     Miller's first workers' compensation claim was made after Miller suffered an on-the-

job injury in March 1995 while working for MDECD. She slipped and fell while making coffee (the 1995 accident). Miller filed a petition to controvert. MDECD admitted the injury and paid indemnity and medical benefits.

¶3. Miller's second workers' compensation claim was based upon circumstances happening about six years later. In February 2001, Miller was involved in a motor vehicle accident (the 2001 vehicle accident). She filed a separate petition to controvert with respect to this accident, asserting that it occurred while she was traveling to the hospital to get an MRI associated with injuries she suffered in the 1995 accident. In its answer, MDECD admitted that Miller was traveling for medical treatment for injuries related to Miller's 1995 accident when she was injured in the 2001 vehicle accident. MDECD paid for treatment related to injuries Miller sustained in the 2001 vehicle accident.

¶4. GRC's Policy was for amounts covered under the Policy exceeding a $350,000 per-accident retention. The Policy was in effect at the time of Miller's 1995 accident, but it was not in effect at the time of the 2001 vehicle accident.

¶5. After GRC reserved rights under the Policy to deny coverage for the 2001 vehicle accident, MDECD moved to consolidate Miller's two workers' compensation proceedings for "hearing and compensability purposes," asserting that it was warranted because the injury Miller claimed she suffered in the 2001 vehicle accident was "a compensable component of the original [(1995)], underlying claim." Miller joined in the motion to consolidate. The AJ granted MDECD's motion and issued an order consolidating both claims for hearing,

2

discovery, and compensability purposes.

¶6.     GRC was provided no notice of this motion but only a copy of the AJ's order after the time for appeal had expired. Based upon the circumstances discussed below, GRC intervened in the workers' compensation proceedings to protect its interest as an "excess insurer." The first order on consolidation was rescinded, GRC was allowed to intervene, and ultimately the AJ issued a final order in March 2020, finding "that [Miller's] 2001 accident occurred while undergoing treatment for the original work-related injuries from 1995. Therefore, the injuries sustained in the February 9, 2001, motor vehicle collision are a part of the original claim arising out of the March 3, 1995, injury."

¶7.     During the course of these proceedings, Miller died on July 19, 2017. Her estate did not pursue any benefits or other recovery in the workers' compensation proceedings.

¶8.     GRC appealed the AJ's final order to the Mississippi Workers' Compensation Commission (Commission). Because Miller was deceased and her estate pursued no recovery, the Commission found both workers' compensation claims moot, vacated the AJ's findings, and dismissed both workers' compensation claims in their entirety. Additionally, in light of its determination that the "entire matter [was] moot," the Commission expressly stated that it would provide no opinion on whether the matter involved one or two claims or whether the 2001 vehicle accident was compensable.

¶9.     On appeal, MDECD asserts that the Commission erred in dismissing Miller's two cases "based upon the doctrine of mootness." MDECD also asserts that "[t]he 2001 motor

vehicle accident occurred while the claimant was on her way to receive diagnostic treatment related to her compensable 1995 accident. Therefore, any injuries sustained in the collision were compensable consequences of the original accident and would not constitute a separate and distinct injury."

¶10. For the reasons explained below, we find that the Commission did not err in vacating the AJ's March 9, 2020 order, dismissing both of Miller's compensation claims in their entirety, and declining to make any "finding whether [Miller] sustained one claim or two claims." We therefore affirm the Commission's order. Because we do so, we do not address MDECD's second assignment of error regarding the compensability of Miller's 2001 motor vehicle accident claim.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶11. Jackson County Welcome Center worker Julia Miller sought workers' compensation from her employer MDECD in two separate workers' compensation actions. Miller's first claim arose from injuries she incurred when she slipped and fell while working at the welcome center on March 3, 1995. In her petition to controvert filed on March 30, 2000 (MWCC 96 17314-H-0894), Miller alleged she incurred injuries to both knees, both elbows, back, and right shoulder. MDECD admitted the injury and paid indemnity and medical benefits.

¶12. Miller's second claim arose from a motor vehicle accident that occurred on February 9, 2001, while Miller was a passenger in a car driven by her pastor's wife. In her petition to

controvert filed on August 29, 2002 (MWCC 02 10486-H-4992), Miller alleged that she was en route to medical treatment for an MRI that related to injuries from the 1995 accident when the 2001 vehicle accident occurred.[1]  In its answer, MDECD denied that the accident arose out of Miller's employment and denied that she was acting in the course and scope of her employment at the time of the accident, but it admitted Miller was traveling to a medical appointment relating to her 1995 workers' compensation claim.  MDECD paid for medical treatment relating to Miller's injuries in the accident.

¶13.    The parties to this appeal are Appellant MDECD and Appellee GRC.  National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union) filed an amicus curiae brief.  As noted, MDECD is a self-insured employer pursuant to section 71-3-75(2) of the Act, which allows an employer "desiring to be exempt from insuring its liability for workers' compensation" to self-insure by meeting specified conditions.  MDECD is a member of the Mississippi State Agencies Self-Insured Workers' Compensation Trust (Trust) for this purpose.  Miss. Code Ann. § 71-3-75(3) (allowing group self-insurers meeting specified requirements).

¶14.    GRC issued an "Excess Insurance Policy for Self-Insurer of Workers' Compensation and Employer's Liability" to the Trust for amounts covered under the Policy exceeding a $350,000 per-accident retention.  The Policy was in effect at the time of Miller's 1995

---

[1] Although the petition to controvert provides that Miller was on her way to the hospital "for [an] MRI on [her] shoulder," the medical records reflect, and the parties agree, that a cervical spine MRI had been ordered.

accident but was not in effect at the time of the 2001 vehicle accident. The Policy provides

excess reimbursement for "loss" and a pro rata share of "claim expenses," as both terms are

defined in the Policy. "Loss" under the Policy means "amounts actually paid by the Insured

as a self-insurer under the Workers' Compensation Law." Loss for bodily injury by accident

must occur during the policy period.[2]

¶15.   National Union issued excess insurance to MDECD effective July 1, 2000, through

July 1, 2001. National Union's policy was in effect at the time of the 2001 vehicle accident.

¶16.   On July 19, 2017, Miller died from causes unrelated to the injuries asserted in her

workers' compensation claims. The record reflects that neither Miller nor her estate sought

any further compensation from MDECD arising from the two claims. On November 8, 2017,

MDECD filed a notice of final payment (B-31), reporting that it had paid $697,781.85 in

benefits to Miller.

¶17.   The history between MDECD and GRC with respect to coverage under the Policy and

the procedural history of this case are interrelated, and we therefore discuss both together.

¶18.   To briefly summarize Miller's claims, Miller filed her petition to controvert relating

---

[2] The Policy provides:

This Insurance applies to losses paid by the Insured as a qualified self-insurer
under the Workers' Compensation Law for bodily injury by accident . . . ,
provided:

l. the bodily injury by accident occurs during the period this
policy is in force . . . .

6

to the 1995 accident on March 30, 2000, and she filed her separate petition to controvert relating to the 2001 vehicle accident on August 27, 2002. As to the 1995 accident, MDECD admitted the injury and paid indemnity and medical benefits. Regarding the 2001 vehicle accident, MDECD denied that the accident arose out of Miller's employment but admitted "that [Miller] was traveling to or from a medical appointment related to her 1995 workers' compensation claim." MDECD paid for medical treatment associated with Miller's injuries arising from the collision.

¶19.  On August 26, 2003, Miller and MDECD jointly filed a motion to consolidate Miller's two cases for hearing and discovery purposes only. An agreed order was entered by the administrative judge (AJ) on October 13, 2003.

¶20.  In 2005, MDECD gave notice to GRC of the 1995 accident.[3] The one-page notice reported only the 1995 accident. It did not mention the 2001 vehicle accident claim. MDECD's next report to GRC, in 2010, was eight pages in length and delineated Miller's medical treatment through August 2010. The subrogation section of the report provided that "[t]here is potential subro for an intervening auto accident that claimant was involved in while going for medical treatment[,]" but again, the report did not reference the separate claim Miller filed for the 2001 vehicle accident in August 2002.

¶21.  In a letter dated January 25, 2013, GRC reserved rights under the Policy to deny

---

[3] To avoid confusion, in describing the claims history we generally refer to MDECD or GRC as including claims representatives or other entities acting on their behalf.

coverage for the 2001 vehicle accident, determining that according to their own review of the claim file provided by MDECD, the 1995 accident and the 2001 vehicle accident were separate claims and "[u]nfortunately, the costs related to these separate claims have been commingled in the claim reported to GRC resulting in the corruption of both medical and financial documentation." In determining "whether an indemnification duty is owed under the Policy, [GRC] . . . considered the loss benefits paid beginning 3/3/1995 until the intervening accident of 2/9/2001, [in the] total amount of $88,396.22." GRC explained that "[b]ecause this amount is below the Self-Insured Retention of $350,000, there is no indemnification due at this time."

¶22. MDECD responded in a letter dated March 13, 2013, furnishing an opinion letter from its attorney; a copy of the decision in *Charles N. Clark Associates Ltd. v. Dependents of Robinson*, 357 So. 2d 924 (Miss. 1978); and an informal opinion letter from Scott Clark, Senior Attorney for the Commission, as support for its position that the 2001 vehicle accident and the 1995 accident were not separate claims because Miller was en route to medical treatment relating to her 1995 accident when the vehicle accident occurred.

¶23. On October 10, 2013, without notice to GRC, MDECD moved to consolidate the 1995 accident and 2001 vehicle accident separate claims "for hearing and compensability purposes"—even though over three years earlier (on January 29, 2010) the AJ entered orders in both the 1995 accident and 2001 vehicle accident matters removing both claims from the controverted docket because there was "no controversy currently pending between the

8

parties." Miller joined in the October 2013 motion to the extent it was intended "to formalize the consolidation of her claim under one single claim . . . notwithstanding the filing of 2 Petitions to Controvert by counsel for the claimant."

¶24. The AJ entered an order consolidating both the 1995 accident and the 2001 vehicle accident claims for hearing and compensability purposes on March 13, 2014.

¶25. In a letter dated May 14, 2014, MDECD sent the AJ's March 13, 2014 consolidation order to GRC, informing GRC that "[t]his Order consolidates [Miller's] Petition to Controvert filed on March 22, 2001 with [Miller's] March 3, 1995 claim," and used it as support for its demand that GRC pay "excess reimbursement" in the amount of $291,979.33, which it showed by its calculation was the amount it had paid Miller above the $350,000 self-insured retention.

¶26. GRC then moved to intervene in the workers' compensation proceeding to challenge the March 13, 2014 consolidation order, explaining in its motion that it was an interested party in that "it provides excess insurance to the self-insured employer [(MDECD)], . . . with separate rights, duties and obligations, and as such it is entitled to intervene in the [matter]." MDECD did not oppose the motion. Following a telephonic hearing, the AJ allowed GRC to intervene for that purpose and rescinded the order consolidating Miller's two claims.

¶27. MDECD then filed a second renewed motion to consolidate, again requesting consolidation of the two separate claims for all purposes and stating in the motion that Miller was in agreement with consolidating the claims "and that all such treatment under said

9

[consolidated] claim be deemed related to the initial [1995] injury." In that motion, MDECD acknowledged that in its answer to Miller's 2001 petition to controvert, "it . . . admitted that the claimant was traveling to or from a medical appointment related to her workers' compensation claim regarding her 1995 accident, and therefore, was a compensable component of the original, underlying claim." MDECD also stated that it had "affirmatively pleaded that the claimant's treating physician had indicated that her current L3-4 lumbar/low back problems were related to her work injury of 1995." Attached to MDECD's motion was a May 2, 2002 letter from Miller's treating physician, Dr. John McCloskey, in which he stated that "I believe that Ms. Miller's problem with spinal stenosis at L3-4 is directly related to her work injury of March 1995."

¶28. In response, GRC asserted that the medical records it had been furnished in discovery did not establish a connection between the cervical MRI ordered by Dr. Tim Revels in 2001 and the 1995 accident. In particular, GRC asserted that although the medical records demonstrate Miller was evaluated for right arm pain by Dr. Revels on January 11, 2001, "[he] did not determine the nature of the injury or its causal connection, if any, to the 1995 injury or any other work-related injury." Rather, according to GRC, the medical records read as a whole show that Dr. Revels "simply ordered an MRI of [Miller's] cervical spine nearly six years after her 1995 work accident because the claimant was complaining of right arm pain, numbness and weakness." According to GRC, "[t]here is no indication . . . that [Miller] suffered an injury to her cervical spine, right arm or right shoulder in the 1995 accident.

Accordingly, the connection between the MRI ordered in 2001 and the 1995 accident has not been established." In its supplemental response, GRC included reports from Dr. Rahul Vohra and Dr. John Davis that it had also obtained in discovery. Both doctors conducted Employer Medical Examinations (EMEs) for MDECD. Citing their reports, GRC asserted that both doctors found that Miller did not suffer an injury to her cervical spine in the 1995 accident. Among other findings, GRC pointed out that Dr. Vohra "concluded that [Miller's] neck pain was related to her 2001 motor vehicle accident," and that Dr. Davis noted that, "[b]y her own admission, . . . [Miller's] neck problems did not start until 2001."

¶29. GRC also asserted in its response and supplemental response that the evidence did not establish that the 2001 vehicle accident occurred while Miller was on the way to get medical treatment. In support, GRC asserted that Miller testified in her deposition that she was traveling with her pastor's wife and they were driving down to Pascagoula to meet Miller's husband and that he was planning to take Miller to her medical appointment. GRC pointed out that Miller "did not testify that she was going straight to her medical appointment or had other plans for the day before her appointment." The accident report was admitted as an exhibit at the June 23, 2017 hearing on MDECD's motion. It showed that the accident occurred at 12:19 p.m. A map of the area where the accident occurred (admitted at the hearing as exhibit 8) showed that the accident happened approximately two miles from the hospital where the MRI was scheduled. Miller's appointment was scheduled for 3:15 p.m.

¶30. As noted, MDECD's motion was heard on June 23, 2017. At the hearing, MDECD's

11

counsel acknowledged that MDECD was only seeking a declaration of the law on a legal issue relevant to its dispute with GRC and acknowledged that the Commission lacked jurisdiction over any insurance coverage reimbursement dispute between it and GRC. As MDECD's counsel explained: MDECD seeks "a declaration by the Commission of what is the law [and] how is it [(the 2001 vehicle accident)] treated . . . . Is it part of the original 1995 claim or is it separate[?]" Continuing, MDECD's counsel stated:

> If [the 2001 vehicle accident is] part of the '95 claim, then I've exhausted my administrative remedy and then I'm going to pursue my reimbursement from GRC in a completely different legal manner because I frankly don't think that the Commission has jurisdiction to order GRC to reimburse [MDECD]. But that's not what I'm here for. I'm not asking you or the Commission to order that reimbursement, I'm asking for a declaration of what the law is when a claimant is injured on her way to receive medical treatment.

Later in his argument, counsel for MDECD reiterated: "[MDECD is] essentially asking Your Honor to issue a ruling just telling [it] in light of Commission precedent if this accident that occurred on February 9th, 2001, is considered part of the original March 3rd, 1995, claim."

¶31.    The AJ granted MDECD's motion and issued an order of consolidation on September 12, 2017. GRC appealed the AJ's order to the full Commission. The Commission denied review, determining that the order was interlocutory in nature. On March 9, 2020, with MDECD's and GRC's consent, the AJ amended her order and issued a "Final Order" finding "that [Miller's] 2001 accident occurred while undergoing treatment for the original work-related injuries from 1995. Therefore, the injuries sustained in the February 9, 2001, motor vehicle collision are a part of the original claim arising out of the March 3, 1995, injury."

12

GRC appealed the AJ's final order to the full Commission.

¶32.   Miller died on July 19, 2017, even before the AJ entered the first September 12, 2017 order.[4]

¶33.   After briefing on the consolidation issue, the Commission issued its order on July 8, 2020, vacating the AJ's March 9, 2020 final order, dismissing both of Miller's compensation claims in their entirety, and expressly stating that it "[made] no finding whether the Claimant sustained one claim or two claims."

¶34.   In its order, the Commission began its analysis by setting forth the AJ's finding "that [Miller's] 2001 accident occurred while undergoing treatment for the original work-related injuries from 1995; therefore, the injuries sustained in the February 9, 2001, motor vehicle collision are a part of the original claim arising out of the March 3, 1995, injury."

¶35.   The Commission then observed:   "[Miller] passed away on July 19, 2017.  A suggestion of death was filed with the Commission on February 14, 2018.  The [AJ] found that 'the claimant is not making any claims for additional payment of compensation or medical expenses.' [(Citing the AJ's March 9, 2020 Order)]."  Recognizing that "[t]he sole issue before the [AJ], and now before the Commission, is whether [Miller's] motor vehicle collision on February 9, 2001, is a separate and distinct claim, or part of the original injury of March 3, 1995," the Commission found:

---

[4] After MDECD became aware of Miller's death, it filed a suggestion of death with the Commission on February 14, 2018.

Neither [Miller] nor her estate is making any claims for additional payments of compensation or medical expenses related to MWCC No. 9617314-H-0894 [(the 1995 accident)] or to MWCC No. 0210486-H-4992 [(the 2001 vehicle accident)]. Because no further benefits are sought, the Commission expresses no opinion whether this matter is one claim or two claims, and there is no need to make any determination concerning compensability of the February 9, 2001 accident because this entire matter is now moot.

Therefore, based on the above brief analysis and the record as a whole, the Commission vacates the Order dated March 9, 2020; and we hereby dismiss MWCC No. 9617314-H-0894 and MWCC No. 0210486-H-4992.

MDECD appealed.

## STANDARD OF REVIEW

¶36. Our appellate review in a workers' compensation case "is limited to determining whether the Commission's decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated [the claimant's] constitutional or statutory rights." *Sims v. Delta Fuel*, 308 So. 3d 859, 863 (¶15) (Miss. Ct. App. 2020), *cert. denied*, 302 So. 3d 645 (Miss. 2020) (quoting *Gregg v. Natchez Trace Elec. Power Ass'n*, 64 So. 3d 473, 475 (¶8) (Miss. 2011)). "This Court affords de novo review to the Commission's application of the law." *Id.*

## DISCUSSION

### The Commission's Dismissal of Miller's 1995 Accident and 2001 Vehicle Accident Cases in Their Entirety

¶37. MDECD asserts that it was error for the Commission to dismiss Miller's 1995 accident and 2001 vehicle accident cases "based on the doctrine of mootness." We find no error in the Commission's dismissing the cases in their entirety as addressed below.

14

¶38.    We begin by recognizing that Mississippi Code Annotated section 71-3-1(3) delineates the express purposes of the Act as follows:

> The primary purposes of the Workers' Compensation Law are to pay timely temporary and permanent disability benefits to every worker who legitimately suffers a work-related injury or occupational disease arising out of and in the course of his employment, to pay reasonable and necessary medical expenses resulting from the work-related injury or occupational disease, and to encourage the return to work of the worker.

Thus, the focus of the Act is to provide workers with timely benefits and encourage their return to work. Miss. Code Ann. § 71-3-1(3). To this end, "[a] significant aspect of the rationale for adoption of workers' compensation laws [includes the idea] . . . that these laws in the hands of an expert and focused administrative agency could deliver benefits quickly and inexpensively without high, litigation-type costs[.]" John R. Bradley & Linda A. Thompson, *Mississippi Workers' Compensation Law* § 1:2 (2021 ed.).

¶39.    In this case, Miller pursued two workers' compensation claims in accordance with the Act. The Commission found that Miller had died and neither she nor her heirs were pursuing any further benefits under the Act. These findings are supported by substantial evidence in the record. Indeed, Miller died even before the AJ entered her September 12, 2017 order, and Miller had been deceased nearly three years when the AJ's final order was entered on March 9, 2020. Based upon these facts, and in light of the Act's purpose to provide workers with timely benefits, *see* Miss. Code Ann. § 71-3-1(3), through the use of "an expert and focused administrative agency" devoted to workers' compensation matters, we find no error in the Commission's determining that the workers' compensation claims were thereby moot

15

and dismissing the cases in their entirety. Bradley & Thompson, *Mississippi Workers' Compensation Law* § 1:2.

¶40. MDECD asserts, however, that the Commission erred in declining to decide the 2001 vehicle accident compensability issue because an "actual controversy" exists on this issue between MDECD and GRC. Citing *In re City of Biloxi v. City of Gulfport*, 113 So. 3d 565, 572 (¶21) (Miss. 2013), MDECD further asserts that "a case is moot only if 'a judgment on the merits . . . would be of no practical benefit to the plaintiff *or detriment to the defendant*.'" (Emphasis in Appellant's Brief).

¶41. In relying on this principle, MDECD ignores that the "controversy" between MDECD and GRC is an insurance coverage dispute—and any "detriment" to MDECD relates not to Miller's workers' compensation proceedings but to the coverage dispute between it and GRC that was not before the Commission. For this reason we find this assertion without merit.

¶42. MDECD's own description of the controversy illustrates this point. According to MDECD, "[t]he controversy hinges on whether Miller was traveling to obtain reasonable and necessary medical treatment from her 1995 slip and fall accident at the time of the 2001 motor vehicle collision." Explaining the ramifications of resolving this issue, MDECD asserts:

> If that accident is an extension of the 1995 claim due to the fact that Miller was seeking medical treatment related to her compensable injury, then GRC is in breach of its policy and owes a substantial sum to MDECD and the Trust. If the 2001 accident is not an extension of the 1995 injury, *then GRC would owe nothing because MDECD and the Trust had not paid more than $350,000 on the claim at the time of the second accident. Under this scenario, there would*

16

*be a clear and obvious detriment to MDECD and the Trust.*

(Emphasis added). Although the compensability of the February 9, 2001 accident could have affected MDECD's obligations to Miller, MDECD made no challenge in that regard, but rather accepted Miller's claims and paid them. When Miller died and her estate sought no benefits, the issue was rendered moot as to Miller's claims, and the Commission had no reason to consider the issue because it could not affect the employee's rights in any way. Miss. Code Ann. § 71-3-1(3). As shown by the language italicized above, the "detriment" MDECD claims it would suffer relates entirely to the insurance coverage dispute between it and GRC that, as noted, was never before the Commission.

¶43. MDECD cites *Gamma Healthcare Inc. v. Estate of Grantham*, No. 2019-WC-00913-COA, 2020 WL 7040956 (Miss. Ct. App. Dec. 1, 2020), *reh'g denied* (Mar. 30, 2021), *cert. granted*, 321 So. 3d 563 (Miss. 2021), in support of its assertion that the 2001 vehicle accident compensability issue is not moot. We find *Gamma Healthcare* distinguishable and inapplicable in this case.[5]

¶44. The claimant in *Gamma Healthcare* was rendered a paraplegic due to a work-related accident. *Id.* at *1 (¶1). A dispute between the claimant and the employer/carrier arose over certain issues, including replacement of "failed or failing septic and HVAC systems" and whether the employer/carrier must pay for property/collision insurance on the claimant's van.

---

[5] We also note that because *Gamma Healthcare* is currently pending on certiorari before the Mississippi Supreme Court, it is subject to revision or withdrawal.

*Id.* The AJ and Commission "ordered the [e]mployer/[c]arrier to replace the failed or failing septic and HVAC systems . . . and to pay for property/collision insurance for [the claimant's] van." *Id.* "In a separate order, the Commission also ordered the [e]mployer/[c]arrier to pay attorney's fees of $4,000 as a sanction for appealing the AJ's order to replace the septic and HVAC systems." *Id.*

¶45.    The employer/carrier challenged both orders on appeal. *Id.* at *1 (¶2). The claimant died after the appeal was filed. *Id.* Her estate was substituted as the appellee. *Id.* In supplemental appellate briefing addressing the effect of the claimant's death, the estate conceded that the claimant's death "abates the [e]mployer/[c]arrier's obligations to replace the septic and HVAC system and pay insurance premiums." *Id.* at *3 (¶14).

¶46.    Regarding the employer/carrier's appeal of the sanctions order, unlike the instant case, neither party asserted that the Commission's order imposing sanctions was moot. *Id.* The sanctions order was plainly not moot because it was an order requiring the employer/carrier in that case to pay a penalty in the form of monetary sanctions. *Gamma Healthcare* offers no guidance in this case or support for MDECD's position. Miller never challenged the 2001 vehicle accident compensability issue and, in fact, joined in MDECD's motions to consolidate, and Miller's estate sought no recovery or any other relief in either of the workers' compensation proceedings or on appeal. Finally, unlike the Commission's sanctions order relating to the employer/carrier's conduct in the workers' compensation proceeding, the 2001 vehicle accident compensability issue related solely to the insurance

18

coverage and reimbursement dispute between MDECD and GRC that was not before the Commission.

¶47. MDECD also asserts that it would suffer "detriment" if the mootness doctrine were applied here due to the "considerable time and resources [it expended] litigating [the 2001 vehicle accident compensability] . . . issue with GRC" in the workers' compensation proceedings. What this Court finds relevant with respect to this assertion, however, is that it was MDECD's own actions that forced GRC to intervene in Miller's workers' compensation proceedings in the first place. As such, we find this argument wholly unconvincing.

¶48. To briefly reiterate these circumstances, in October 2013, MDECD initially sought to consolidate both of Miller's compensation proceedings "for hearing and compensability purposes" without notice to GRC. Miller joined in this motion. In March 2014, the AJ granted MDECD's motion, consolidating both proceedings for all purposes. *After time to appeal that order had expired*, MDECD sent the AJ's March 13, 2014 consolidation order to GRC, informing GRC that "[t]his Order consolidates [Miller's] Petition to Controvert filed on March 22, 2001 with [Miller's] March 3, 1995 claim." We find MDECD's statements in this letter important. MDECD pointed out that "[t]his Order finds all indemnity and medical treatment is arising out of the compensability of the original work[-]related injury of March 3, 1995," and informed GRC that "[t]he claimant did not file an appeal to this Order and it is now final." Finally, MDECD demanded that GRC pay "excess reimbursement" in the

19

amount of $291,979.33, which it showed by its calculation was the amount it had paid Miller above the $350,000 self-insured retention. GRC was then forced to intervene in the workers' compensation proceeding to challenge the March 13, 2014 consolidation order. Plainly, the issue before the Commission—the compensability of Miller's 2001 vehicle accident—relates solely to the insurance coverage dispute between MDECD and GRC. Under these circumstances, we find no error in the Commission's dismissing both of Miller's proceedings in their entirety based upon Miller's death and the fact that her estate sought no recovery in the proceedings in any way.

¶49. We make one final point. Even if the insurance coverage dispute between MDECD and GRC were within the Commission's jurisdiction, MDECD plainly seeks an advisory or declaratory opinion by pressing the 2001 vehicle accident compensability issue. We recognize that the Commission is authorized to issue declaratory opinions under specified guidelines. *See* Miss. Code Ann. § 25-43-2.103 (Rev. 2018) and Miss. Workers' Comp. Comm'n Proc. R. 2.24 (*Requests for Declaratory Opinions*). But Procedural Rule 2.24.301 specifically sets forth a nonexhaustive list of "circumstances in which declaratory opinions will *not* be issued." (Emphasis added). Two of the circumstances listed apply here. First, the Commission will not issue a declaratory opinion where "the request seeks to resolve issues which have become moot." Miss. Workers' Comp. Comm'n Proc. R. 2.24.301(7). We have addressed that situation above. Second, the Commission will not issue a declaratory opinion where "the request is not based upon facts calculated to aid in the planning of future

20

conduct, but is, instead, based on past conduct in an effort to establish the effect of that conduct[.]" Miss. Workers' Comp. Comm'n Proc. R. 2.24.301(10). This is precisely what MDECD is doing in this case by seeking a declaratory opinion on the 2001 vehicle accident compensability issue. Because MDECD already paid Miller her benefits under both claims, and her estate does not seek any benefits, MDECD has no need for a ruling on the 2001 vehicle accident compensability issue "to aid in planning future conduct." Instead, based upon its "past conduct" in paying these benefits, MDECD seeks a declaratory opinion on the 2001 vehicle accident compensability issue "in an effort to establish the *effect* of that conduct" under the Policy GRC issued to the Trust and under which MDECD seeks reimbursement. (Emphasis added). The Commission will not issue a declaratory opinion under such circumstances. *Id.* For these additional reasons, we find that the Commission made no error in declining to address the 2001 vehicle accident compensability issue.

¶50. For all the reasons set forth above, we find that the Commission's July 8, 2020 order vacating the AJ's March 9, 2020 order, dismissing both of Miller's compensation claims in their entirety, and declining to make any "finding whether [Miller] sustained one claim or two claims," was supported by substantial evidence, was neither arbitrary nor capricious in any way, and was plainly within the Commission's authority to render. *See Gregg*, 64 So. 3d at 475 (¶8). The Commission's decision is therefore affirmed. Because we affirm the Commission's decision on these grounds, we do not address MDECD's second assignment of error regarding the compensability of Miller's 2001 motor vehicle accident claim.

¶51.   **AFFIRMED.**

**BARNES, C.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**